**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ADAN GONZALES,

    Petitioner,

vs.          Case No.  3:11-cv-408-J-34JRK
                    3:08-cr-139-J-34JRK

UNITED STATES OF AMERICA,

    Respondent.

## <u>ORDER</u>

This case is before the Court on Petitioner Adan Gonzales' <u>pro se</u> Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (Doc. 1; Motion to Vacate), as well as his Memorandum Brief in Support of <u>Pro Se</u> Motion to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody Pursuant to (28 U.S.C. § 2255), (Doc. 2; Supporting Memorandum), both filed on April 28, 2011.[1] In response, the Government filed the United States' Motion to Dismiss Petitioner Gonzales' <u>Pro Se</u> Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Doc. 8; Motion to Dismiss). Petitioner then filed Petitioner's Objection to the Government's Motion to Dismiss. (Doc. 10; Response). Here, the Court considers Petitioner's Motion to Vacate and the Government's Motion to Dismiss, both ripe for the Court's review.

---

[1] Citations to Petitioner's criminal case file, 3:08-cr-139-J-34JRK, are denoted as "Crim. Doc. __." Citations to Petitioner's civil § 2255 case file, 3:11-cv-408-J-34JRK, are denoted as "Doc. __."

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings,[2] the Court has considered the need for an evidentiary hearing and has determined that an evidentiary hearing is not necessary to resolve the merits of this action. Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (indicating that an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

## I.    Background

On April 17, 2008, the United States returned an indictment against Adan Gonzales (Gonzales) and three co-defendants, charging Gonzales with one count of conspiring to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and one count of willfully and intentionally possessing with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). See Indictment at 1–3 (Crim. Doc. 1). Pursuant to a Plea Agreement, the Government agreed to dismiss count two, the substantive offense, and Gonzales agreed to plead guilty to count one, the conspiracy offense. See

---

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

[3] Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

Plea Agreement at 1–2 (Crim. Doc. 93). The Plea Agreement set forth the elements of the conspiracy to distribute cocaine offense, the minimum and maximum penalties that Gonzales faced, and the facts which the Government was prepared to prove if Gonzales proceeded to trial. Id. at 1–2, 15–18. Significantly, the Plea Agreement also included a sentence-appeal waiver provision, stating that Gonzales:

> expressly waives the right to appeal [his] sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution.

Plea Agreement at 10 (emphasis in original).

On October 30, 2008, Gonzales appeared before the Honorable James R. Klindt, United States Magistrate Judge, for a change of plea hearing where the Magistrate Judge conducted a thorough and extensive plea colloquy. See Clerk's Mins. (Crim. Doc. 91); see generally Plea Tr.[4] In the plea colloquy, Judge Klindt covered all of the matters required by Rule 11 of the Federal Rules of Criminal Procedure, and Gonzales' responses established that he was aware of the charges, the penalties he faced if convicted, and his rights. Gonzales acknowledged that he was under oath; that he was pleading guilty because he was guilty; that his plea was a free, voluntary, and independent decision; that no one forced, coerced, or threatened him to plead guilty; and that he was not relying on any agreement, discussion, promise, or understanding other than those contained in the written Plea Agreement. Id. at 5, 34–35. Gonzales

---

[4] The transcript of the change of plea hearing is found in the docket for Gonzales' criminal case (Crim. Doc. 140) and will be cited here as Plea Tr.

acknowledged that he had read every page and every word of the Plea Agreement and that he understood it. Plea Tr. at 19–20. During Gonzales' plea colloquy, the Magistrate Judge specifically questioned Gonzales about the paragraph covering his waiver of the right to appeal and to collaterally challenge his sentence and assessed whether Gonzales fully understood that he was waiving his right to appeal his sentence:

> THE COURT: Now normally, Mr. Gonzales, you would have the right to appeal in your sentence on any grounds that you think is appropriate including an incorrect application of the guideline, sentencing guidelines, but under your plea agreement you're waiving and giving up your right to appeal or otherwise challenge the sentence which is imposed upon you, either directly or collaterally, unless certain specific circumstances are present.
>
> So, in other words, you're waiving and giving up your right to appeal or collaterally attack your sentence unless one of the specific things set out in paragraph B 5 happen, all right, and those are as follows:
>
> A, the ground that the sentence exceeds the defendant's applicable guidelines range . . ; or the ground that the sentence violates the 8th Amendment to the Constitution[; or] . . . if the government exercises its right to appeal, then you'd be released from this wavier and you could appeal or file a collateral attack.
>
> Do you understand all of that?
>
> THE DEFENDANT: Yes, sir.

Id. at 24–42. The Magistrate Judge also explained the meaning of collateral challenges to a sentence, asked if Gonzales understood he was waiving his right to collaterally challenge his sentence including claims of ineffective assistance of counsel at sentencing, and confirmed with Gonzales that he was making this waiver freely and voluntarily. Id. at 26–27.

4

In the course of the plea colloquy, Gonzales acknowledged the essential elements the Government would be required to prove beyond a reasonable doubt if he proceed to trial on the conspiracy charge offense, Plea Tr. at 15–16. Gonzales' responses to the Magistrate Judge's questions established that he was aware of his constitutional rights, id. at 10–12, and the consequences of his guilty plea, id. at 16–17 (highlighting the minimum and maximum penalties as expressly stated in the Plea Agreement: "Count 1 is punishable by a mandatory minimum term of imprisonment of ten years up to life imprisonment . . . ."). Additionally, the Magistrate Judge explained the discretionary nature of the guidelines, informing Gonzales that the guidelines range would not be known until after the probation office prepared his pre-sentence report and that his sentence might be "different than any estimated sentence that [defense counsel] or anyone else has given you" and it may be "more severe than you expect." See Plea Tr. at 13–14. Gonzales answered affirmatively that he understood the uncertain outcome of his sentence and his inability to appeal it, even if he was unhappy with the sentence. Id.

After informing Gonzales of the charges and his rights and confirming that Gonzales understood all the matters discussed, the Magistrate Judge asked Gonzales:

> THE COURT: [H]ow do you plead, guilty or not guilty to Count 1 of the indictment?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: Are you pleading guilty because you are guilty
>
> THE DEFENDANT: Yes.

Id. at 28. The Magistrate Judge then asked the Government to provide the factual basis supporting the guilty plea. The Government proffered the following:

a confidential source negotiated with a Manual Nava, a co-conspirator, for the purchase of 20 kilograms of powder cocaine. Mr. Nava introduced the confidential source to Gonzales, who agreed to the sale of 5 kilograms of cocaine at a price of $25,000 per kilogram. Several recorded meetings between Gonzales and the confidential source took place prior to the sale. Gonzales provided a 25.2 gram sample of cocaine to the confidential source during a period of negotiations. The confidential source was then instructed to drive with Gonzales to the location of the cocaine, the house of Francisco Raygoza, another co-conspirator. Once at Raygoza's house, Miramontes, Raygoza's nephew and another co-conspirator, showed the confidential source three kilograms of cocaine in three separate packages. The confidential source was told that the remaining two kilograms were in one of the vehicles in the driveway. After arrests were made and a search executed at the location, the Government located and seized 7.8173 kilograms of cocaine.

Id. at 29–33. Gonzales then confirmed the accuracy of the Government's proffered facts:

> THE COURT: Mr. Gonzales, is this what you did, in terms of what was stated here about you, is that what you did?
>
> THE DEFENDANT: Yes.

Id. at 33. Gonzales further admitted to the personalization of the elements, id., and affirmed that "the object of the unlawful plan was to distribute cocaine, a schedule II controlled substance, the amount of cocaine being 5 kilograms or more, as charged in the indictment." Id. at 34. At the conclusion of the plea colloquy, the Magistrate Judge recommended that the Court accept Gonzales' guilty plea, and the Court did so on November 5, 2008. Id. at 37–38; see Acceptance of Plea of Guilty, Adjudication of Guilt, and Notice of Sentencing (Crim. Doc. 96).

After continuing Gonzales' sentencing at his request, the Court scheduled the sentencing to proceed on April 1, 2009. See Order (Crim. Doc. 102). At the sentencing, the Court determined that Gonzales' advisory guidelines, by operation of the career offender guideline, were a total offense level of 34 with a criminal history category of VI,

yielding a guideline term of imprisonment of 262 months to 327 months.  Gonzales'
counsel argued that Gonzales' advisory guideline range by virtue of the application of
the career offender guideline was simply too high, and urged the Court to impose a
below guideline sentence.

> [I]t's two cases, two prior cases. And unfortunately, that's what qualifies
> him. But I think . . . all of the things we've heard about how Adan grew up,
> how hard he worked, his support his stepson, . . . I think those things all
> speak very well of him. And I think that it would be appropriate and
> reasonable to sentence him to the ten-year minimum mandatory. This
> career offender, in this case, I just think it's too extreme.
>
> . . . .
>
> Under the guidelines, if you believe that his criminal history is
> overrepresented by the career offender enhancement, you can move one
> category to the left in his criminal history, from a VI to a V. But then I think
> under 3553 you look at all of the factors, including how he was raised, how
> he participated in working in the fields with his parents and sisters and
> brothers and lived the life that his sister Anna described. Those are all
> things I think that you can take into account after correctly calculating the
> guidelines.
>
> Id. at 48–49.
>
> [A]ll of the objectives that we seek to achieve through sentencing are met
> in this case with a ten-year sentence . . . he deserves a sentence that's
> less than what the career offender guidelines are calling for. His whole
> criminal history is two paragraphs.

Id. at. 52. In contrast, the Government argued that the Court should look at the timing
and pattern of Gonzales' prior offenses, and sentence Gonzales in accordance with the
guidelines. Id. at 10–11.

Ultimately, after considering the information provided by Gonzales and his
attorney, including Gonzales' personal history and characteristics, his hard work, and
his commitment to his family, the Court sentenced Gonzales to 200 months

imprisonment, id. at 53–54;[5] Judgment at 2–3 (Crim. Doc. 126), which constituted a downward variance from the advisory guidelines range, see PSR ¶ 58. The Court further explained:

> There's no question that in this case there is a sentence, a need for a sentence that reflects the seriousness of that offense and protects the public. But the Court is of the view that a sentence of 200 months, which I think is about 16 and a half years, is entirely adequate to accomplish all of those things; and that a sentence of close to 22 years, which is what is called for by the guidelines, would be an unreasonably long sentence based upon the - - this individual's criminal history, his personal history and the offense. It is a sentence greater than the sentence imposed with regard to the codefendants. But that is called for, for precisely the reason that the prosecution suggested, and that is that Mr. Gonzales, unlike the codefendants, has had prior drug convictions and has had – should have learned from those prior drug convictions not to engage in this behavior.

Id. at 55.

On April 15, 2009, Gonzales' counsel filed an Anders Brief,[6] and on December 4, 2009, after reviewing the entire record, the Court of Appeals for the Eleventh Circuit affirmed Gonzales' conviction and sentence and permitted Gonzales' counsel to withdraw. Gonzales filed the instant Motion to Vacate, on April 21, 2011, asserting that the Government coerced him to plead guilty by fabricating evidence about the drug quantity. See Motion to Vacate at 10–12. Gonzales also claims that his counsel rendered ineffective assistance by failing to adequately investigate the evidence, failing to advise him that he would be sentenced as a career offender, and failing to argue for a lesser sentence. Id. at 13–25. The Government moved to dismiss the Motion to Vacate,

---

[5] The transcript of the sentencing hearing is found in the docket for Gonzales' criminal case (Crim. Doc. 141) and will be cited here as Sentencing Hearing Tr.

[6] In Anders v. California, 386 U.S. 738 (1967), the Supreme Court held, counsel may be permitted to withdraw if the court affirms, based on counsel's submitted brief, that counsel's case is wholly frivolous. An Anders brief is commonly referred to as a no merits brief.

see Motion to Dismiss at 2–6, and Gonzales filed a Response to that motion, see Response.

## II.     Applicable Law

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a) (2006). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184–86 (1979); United States v. Teague, 953 F.2d 1525, 1534 n.11 (11th Cir. 1992) (explaining that a petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack).

A petitioner's right to directly or collaterally challenge his sentence, even when alleging ineffective assistance claims, may be barred when the petitioner effectively waives that right pursuant to a plea agreement. Williams v. United States, 396 F.3d 1340, 1341–42 (11th Cir. 2005) (holding that a valid sentence-appeal waiver precluded a subsequent collateral attack based on a claim of ineffective assistance of counsel during sentencing), cert. denied, 546 U.S. 902 (2005). The Eleventh Circuit reasoned that "a contrary result would permit a defendant to circumvent the terms of the

sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Id. at 1342. To be enforceable such that a plea agreement's sentence-appeal waiver will bar a § 2255 challenge, the waiver must be made knowingly and voluntarily. See Williams, 396 F.3d at 1341 (citing United States v. Bushert, 997 F.2d 1343, 1350–51 (11th Cir. 1993)). To establish that a waiver was made knowingly and voluntarily, the Government must demonstrate either that: (1) the district court specifically questioned the petitioner regarding the sentence-appeal waiver during the plea colloquy, or (2) the record clearly shows that the petitioner otherwise understood the waiver's full significance. Notably, there is a strong presumption that statements made under oath during a plea colloquy are true, see United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994), and a petitioner bears a heavy burden in showing them to be false, see United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988); see also United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (giving considerable weight to the policy that if the "plea taking procedure is careful and detailed, the [petitioner] will not later be heard to contend that he swore falsely"). Consequently, a petitioner's representations in a plea colloquy may constitute a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977); Thompson v. Wainwright, 787 F.2d 1447, 1460–61 (11th Cir. 1986).

Nevertheless, a sentence-appeal waiver will not bar certain Sixth Amendment ineffective assistance of counsel claims from being considered pursuant to § 2255. When a petitioner alleges an ineffective assistance of counsel claim that challenges the validity or voluntariness of the plea or waiver itself, such as a claim that counsel coerced

or misadvised petitioner prior to entry of the plea, then the sentence-appeal waiver will not bar a court from hearing the merits of the claim.  See Baird v. United States, 445 F. App'x 252, 254 (11th Cir. 2011) (per curiam) (noting that despite a sentence-appeal waiver, collateral attack through an ineffective assistance claim is permitted when "the movant challenges the knowing and voluntary nature of the plea")[7]; see also Patel v. United States, 252 F. App'x 970, 971, 974-75 (11th Cir. 2007) (per curiam) (finding that the district court erred in dismissing, based on a sentence-appeal waiver, petitioner's claim that counsel misadvised him prior to pleading guilty); Cowart v. United States, 139 F. App'x 206, 207-08 (11th Cir. 2005) (per curiam) (holding that a sentence-appeal waiver that only expressly limits a petitioner from collaterally challenging his "sentence" does not bar an ineffective assistance claim that challenges the validity of his plea or the sentence-appeal waiver itself).  Therefore, despite the presence of a sentence-appeal waiver, the Court must address the merits of a § 2255 petitioner's claim of ineffective assistance if it challenges the validity of the plea or waiver.  Id.

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner who claims counsel's ineffective assistance undermined the validity of his guilty plea, must demonstrate both: (1) that his counsel's alleged conduct amounted to constitutionally deficient performance and (2) that his counsel's deficient performance caused sufficient prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984); Hill v.

---

[7] In Baird, the Eleventh Circuit addressed the merits of the petitioner's ineffective assistance claim challenging the validity of both his plea and sentence-appeal waiver.  See Baird, 445 F. App'x at 253-54. The petitioner alleged that he unknowingly and involuntarily entered a guilty plea due to his counsel's failure to properly explain to him the terms of his waiver in his plea agreement.  Id.  The court held that the petitioner was not entitled to relief because he did not show sufficient prejudice, namely, that there was a reasonable probability he would not have pleaded guilty if counsel had explained the terms of the waiver.  Id. (finding that the petitioner's decision to plead guilty was primarily driven by the government's agreement not to forfeit his property, and that counsel's explanation of the waiver would not have deterred his plea.).

Lockhart, 474 U.S. 52, 58 (1985) (applying the two-part Strickland test to ineffective assistance claims arising out of the plea process); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first prong, that his counsel's conduct was deficient performance, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show that counsel's performance, in light of all of the circumstances, fell outside the "wide range of professionally competent assistance." Id. Indeed, "counsel is strongly presumed to have rendered adequate assistance," Strickland, 466 U.S. at 690, and to rebut that presumption and demonstrate that counsel's performance was unreasonable, "[t]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) (citing Strickland, 466 U.S. at 688). This burden of persuasion, though not insurmountable, is a heavy one. See id. at 1314–15 (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)). If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. See id. at 1314 n.15. To satisfy the second prong, that counsel's deficient performance sufficiently prejudiced the defendant, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036–37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met both requirements of deficient performance and prejudice to warrant relief, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court . . . to approach the inquiry in the same order or even to address both components of the

inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697; <u>see also</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

When evaluating counsel's advice regarding the entry of a plea, the question is not "whether a court retrospectively consider[s] counsel's advice to be right or wrong," but rather "whether the advice was within the range of competence demanded of attorneys in criminal cases." <u>McMann v. Richardson</u>, 397 U.S. 759, 769–71 (1970) (concluding that a guilty plea based on "reasonably competent advice" is "not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession"). The Supreme Court has explained:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All of the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts as he understands them, would be viewed by a . . . judge or jury . . . . Waiving trial entails the inherent risk that the good faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

<u>Id.</u> at 769, 770. Thus, when a client pleads guilty, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. <u>Walker v. Caldwell</u>, 476 F.2d 213, 218 (5th Cir. 1973).[8] To provide this understanding to the accused, counsel must, make an independent examination of the case and offer his informed opinion as to the best course to be followed in protecting the

---

[8] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. See <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

interests of his client.   Id. at 217 (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)).

> The right to competent plea bargain advice is at best a privilege that confers no certain benefit. An accused may make a wise decision even without counsel's assistance, or a bad one despite superior advice from his lawyer. The Supreme Court has commented that the unpleasant choice is one the defendant ultimately must make for himself, and that the decision is often inescapably grounded on uncertainties and a weighing of intangibles.

Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984). To establish the prejudice prong in a claim of ineffective assistance during the plea proceeding, the petitioner must show that but for the alleged ineffective advice, the petitioner would not have pleaded guilty and would have proceeded to trial. See Hill, 474 U.S. at 59. The Supreme Court has noted that considerations, such as the defendant's appraisal of the prosecution's case and the apparent likelihood of securing leniency with a guilty plea, frequently present imponderable questions for which there are no certain answers. Brady v. United States, 397 U.S. 742, 756 (1970). As such, the Court has instructed that "[t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to attack if the defendant did not correctly assess every relevant factor entering into his decision." Id. at 757.

## III.   Discussion

Gonzales contends that he was denied due process because the Government allegedly "fabricated evidence against [him] which forced [him] to enter an involuntary guilty plea." See Supporting Memorandum at 10–12. Additionally, Gonzales alleges that his counsel rendered ineffective assistance resulting in Gonzales entering an involuntary and unknowing guilty plea. Id. at 13–25. The Government argues that both

claims are barred, having been effectively waived pursuant to the sentence-appeal waiver outlined in his Plea Agreement. See Motion to Dismiss at 5–6. However, because Gonzales' claims are presented as a challenge to the validity of the plea, this Court will first address his ineffective assistance claim on the merits. See Patel, 252 F. App'x at 974–75. Then, the Court will turn to his due process claim.

### A. Ineffective Assistance of Counsel

Gonzales alleges that his counsel: (1) failed to adequately investigate the evidence supporting the amount of cocaine, which he contends forced him to plead guilty, see Supporting Memorandum at 13–20, (2) failed to advise Gonzales that he would be sentenced as a career offender, which he contends rendered his plea unknowing, id. at 20–22, and (3) failed to adequately investigate and present argument that Gonzales' criminal history category be reduced, which he contends caused him prejudice, id. at 22–25. On review of the record, the Court concludes that Gonzales knowingly and voluntarily waived his right to collaterally challenge his sentence including his right to question the representation and advice he received from his defense counsel.

The Magistrate Judge specifically questioned Gonzales on whether he knowingly and voluntarily waived his right to appeal his sentence, including waiving any claim that the court erred in computing the Sentencing Guidelines, and Gonzales answered affirmatively. See Plea Tr. at 24–25. Gonzales acknowledged that his waiver applied to direct appeals, as well as collateral attacks on his sentence, and that the waiver included ineffective assistance of counsel claims relating to counsel's assessment of the guidelines. See id. at 26–27. Based upon Gonzales' sworn statements during the plea

colloquy, see Medlock, 12 F.3d at 187 (applying a "strong presumption of veracity" to statements made under oath during the plea proceeding), the Court finds that Gonzales freely, voluntarily, knowingly and intelligently pleaded guilty pursuant to the Plea Agreement. See Blackledge, 431 U.S. at 73–74 (explaining that a petitioner's representations in a plea colloquy may constitute a "formidable barrier in any subsequent collateral proceedings"). Therefore, Gonzales effectively waived his right to appeal or challenge his sentence and that his waiver is valid and enforceable. As such, any ineffective assistance of counsel claims are due to be dismissed unless the claimed assistance directly affected the validity of the waiver or the plea itself. See Cowart, 139 F. App'x at 207–08; Patel, 252 F. App'x at 975; Baird, 445 F. App'x at 254.

### i.    Adequate Investigation

In his Motion to Vacate, Gonzales contends that his counsel rendered ineffective assistance when he failed to investigate the Government's evidence concerning the amount of cocaine, see Supporting Memorandum at 13–20, and argues that this failure coerced him to plead guilty, id. at 19. In support of this claim, Gonzales provides an affidavit from a co-conspirator involved in the offense, contending that the offense involved only three kilograms, not the five kilograms alleged in the indictment. See Supporting Memorandum, affidavit at 1–2. Although Gonzales claims to have told his attorney about the drug quantity defense, Id. at 19, this contention is conclusively rebutted by the record which reflects that Gonzales specifically affirmed the quantity of cocaine alleged in the indictment.  Indeed, the quantity of cocaine was specifically set forth in the Plea Agreement, and Gonzales affirmed the quantity of cocaine under oath during the plea colloquy. Gonzales' claim regarding his counsel's performance also

conflicts with Gonzales' sworn statement that he was satisfied with his attorney's representation and had no complaints about the representation. See Plea Tr. at 36. See Medlock, 12 F.3d at 187; Blackledge, 431 U.S. at 73–74. Neither Gonzales' current contentions nor his co-conspirator's affidavit undermine the weight of Gonzales' sworn testimony where he admitted the drug quantity and confirmed that he was knowingly and voluntarily pleading guilty and agreeing to the sentence-appeal waiver provision. See, e.g., Neston v. United States, No. 6:09-cv-1746, 2010 WL 5463091, at *3 (M.D. Fla. Dec. 29, 2010) (holding that a valid sentence-appeal waiver precluded claims arguing ineffective assistance of counsel for failing to challenge evidence, investigate case prior to sentencing, or move for a downward departure at sentencing).

Nevertheless, this Court will address the merits of this ineffective assistance claim. "[P]articular decision[s] not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Williams v. Head, 185 F.3d 1223, 1236 (11th Cir. 1999) (quoting Strickland, 466 U.S. at 691). In evaluating the reasonableness of an attorney's decision, the defendant's own statements or actions that may have influenced the decision are considered. Bertolotti v. Dugger, 883 F.2d 1503, 1512 (11th Cir. 1989). In this case, counsel's decision not to investigate the quantity was reasonable because Gonzales admitted to the proffered evidence. See Weeks, 26 F. 3d at 1036 (analyzing the facts at the time of counsel's conduct and from counsel's perspective); Williams, 185 F.3d at 1237 ("An attorney does not render ineffective assistance by failing to discover [evidence] that his client does not mention to him."). The co-conspirator's affidavit, while favorable to Gonzales' new account of the facts, does not negate the Government's

case. Indeed, the Government's evidence also involved several other witnesses, including the confidential source and several on-scene agents, who would all testify that the drug transaction involved more than five kilograms of cocaine, Plea Tr. at 29–33, recordings of the transaction and surrounding discussions, id. at 29, and the total quantity of seized cocaine, 7.8173 kilograms, id. at 33. In the face of the Government's proffered evidence, counsel's actions were objectively reasonable.

Also, Gonzales does not claim that this alleged evidence would have been found had counsel investigated further prior to the plea. This Court notes that the affidavit submitted by Francisco Raygoza flatly contradicts Raygoza's statements at his change of plea hearing held on September 25, 2008. Plea Hearing Transcript at 37–38, 43 (Crim. Doc. 129). At Raygoza's change of plea hearing, Raygoza was placed under oath, id. at 4–5, and entered a plea of guilty to one count of conspiring to distribute five kilograms or more of cocaine, admitting to the factual basis which reflected five kilograms or more of cocaine.  Id. at 37–38, 43 (Crim. Doc. 129). Raygoza stated that his plea was his own independent decision and that he was not forced, threatened, or coerced in any way. Id. at 45. Thus, under the circumstances known to counsel at the time of the plea, it was not unreasonable not to further investigate.

Moreover, other than the bald assertion that he would have proceeded to trial, Supporting Memorandum at 19–20, Gonzales has not shown that there is a reasonable probability that, but for counsel's allegedly deficient performance, Gonzales would not have pled guilty, especially considering the potentially greater incarceration he would have faced. See Hill, 474 U.S. at 59 (The standard is whether the "discovery of the evidence would have led counsel to change his recommendation as to the plea, [which]

. . . depend[s] in large part on a prediction whether the evidence likely would have changed the outcome of a trial."). The affidavit from Gonzales' co-conspirator does nothing to undermine the rest of the Government's evidence nor does it undermine the veracity of Gonzales' sworn statements at the change of plea hearing where he admitted the quantity. Therefore, the Court concludes that Gonzales' first claim of ineffective assistance of counsel is refuted by the record and due to be denied.

### ii.    Advice concerning career offender enhancement

Gonzales next asserts that counsel rendered ineffective assistance because he failed to advise Gonzales "of the potential application of the career offender provisions." See Supporting Memorandum at 20. This claim relates to advice prior to entering the plea, therefore, the Court will address the merits of this ineffective assistance claim.

Pretermitting Gonzales' allegation that his counsel did not advise him of the career offender enhancement,[9] Gonzales has not shown prejudice. Gonzales does not directly contend that this advice would have changed his decision to plead guilty. Instead, Gonzales asserts he would have "been in a better position to make a reasonable decision." See Supporting Memorandum at 21.[10] However, during the plea colloquy, the Magistrate Judge emphasized the Court's ability to depart from the then-undetermined guidelines range at sentencing and "impose any sentence up to and including the maximum penalty permitted by law," see Plea Tr. at 13, and specifically

---

[9] The Eleventh Circuit has held that failure to advise a defendant of eligibility as a career offender is not per se deficient and must be considered based upon the facts and circumstances of each case. United States v. Pease, 240 F.3d 938, 941–42 (11th Cir. 2001).

[10] Gonzales does state, if he had "known that he was to be charged with over 5 kilograms of cocaine, enhanced according to the [career offender provisions], and that the agents coerced his co-defendant to make false statements, he would have proceeded to trial. See Supporting Memorandum at 22. However, Gonzales never asserts that the allegedly missing information concerning the career offender enhancement would have led him to change his plea decision and proceed to trial.

discussed those maximum penalties with Gonzales. Thus, Gonzales understood the potential penalties he faced based on a guilty plea. Because Gonzales "knew that there was a possibility that he could receive the sentence that was imposed, his disappointment with the result is not grounds to set aside the guilty plea." Tahamtani v. Lankford, 846 F.2d 712, 714 (11th Cir. 1988) (per curiam); see also United States v. Himick, 139 F. App'x 227, 229 (11th Cir. 2005) ("[A] defendant's reliance on an attorney's mistaken impression about the length of [the] sentence [including the applicability of a career offender enhancement] is insufficient to render a plea involuntary as long as the court informed the defendant of [the] maximum possible sentence . . . ."). Additionally, the Court notes that the evidence against Gonzales was quite strong, and if Gonzales was found guilty at trial, the career offender enhancement would still have applied and his guidelines range was likely to have been 360-life because he would not have received the three-level reduction for acceptance of responsibility promised in the Plea Agreement.

Gonzales also contends that counsel assured him that if he pleaded guilty, "he was only to face a sentence of ten years or less." See Supporting Memorandum at 21. This claim that he was not properly informed about the true consequences attendant to his guilty plea is affirmatively contradicted by the record. See Medlock, 12 F.3d at 187; Blackledge, 431 U.S. at 73–74 (explaining that plea colloquy statements may constitute a "formidable barrier in any subsequent collateral proceedings"). Both the written Plea Agreement and the Magistrate Judge specifically informed Gonzales that ten years was the minimum sentence he would receive based on his guilty plea, Plea Tr. at 13, and Gonzales acknowledged that the sentence he would receive might be "different than

any estimate[]" and it might be "more severe" than he expected. Id. at 13–14. On this record, the Court concludes that Gonzales' second claim of ineffective assistance of counsel is due to be denied because he cannot show that but for this allegedly missing advice, he would have changed his plea decision and proceeded to trial. See Hill, 474 U.S. at 59; Strickland, 466 U.S. at 695 (finding that both prongs do not need to be addressed where the defendant makes an insufficient showing on one).[11]

### iii.    Argument at sentencing

In his last claim, Gonzales argues that counsel performed deficiently by "fail[ing] to zealously advocate on his behalf" at sentencing when counsel did not advocate for Gonzales' "criminal history category to be moved from a category six to a category five according to U.S.S.G. § 4A1.3(b)(1)," and his attorney did not request a horizontal departure. See Supporting Memorandum at 23. This claim of ineffective assistance, even if true, does not undermine the validity of Gonzales' Plea Agreement and the attendant sentence-appeal waiver provision. See, e.g., Williams, 396 F.3d at 1342 (holding that a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing). As such, the claim is barred from collateral attack.

---

[11] Gonzales also briefly mentions that his counsel told him he would "handle" the career offender enhancement and advised Gonzales that he would file an appeal, but instead filed an Anders brief. See Supporting Memorandum at 21. The Court has already concluded that Gonzales knowingly and voluntarily agreed to the sentence-appeal waiver, which "includes a waiver of the right to appeal difficult or debatable legal issues-indeed, it includes a waiver of the right to appeal blatant error." Howle, 166 F.3d at 1169. The alleged deficient conduct about which Gonzales complains here arose after the plea, thus, this claim does not attack the validity of the plea or the waiver. Nonetheless, the Court concludes that Gonzales' counsel cannot be said to have engaged in deficient conduct for failing to file an appeal due to the presence of the sentence-appeal waiver. Counsel filed an Anders brief and the Eleventh Circuit Court of Appeals, after an independent review of the record, identified no appealable error and affirmed the conviction.

Nevertheless, the Court notes that Gonzales' claim that his attorney did not argue for reduction of his criminal history category is refuted by the record because his counsel did advocate for both a horizontal and a vertical downward departure. Gonzales' counsel argued in his sentencing memorandum and at the sentencing hearing that the application of the career offender guideline resulted in an over representation of Gonzales' criminal history. See Sentencing Memorandum and Request for Downward Departure at 3–8 (Crim. Doc. 123); Sentencing Hearing Tr. at 47–52; see Medlock, 12 F.3d at 187; Blackledge, 431 U.S. at 73–74. Additionally, counsel argued that the Court should vary downward from the applicable guidelines.

> DEFENSE COUNSEL: . . . . And I think that it would be appropriate and reasonable to sentence him to the ten-year minimum mandatory. This career offender, in this case, I just think it's just too extreme.

> THE COURT: Mr. Fletcher, you realize that even absent the career offender, the operation of the career offender guideline, Mr. Gonzales would be facing 168 to 210 months just based on the offense?

> DEFENSE COUNSEL: You know, Judge, I thought it was 97 to 121.

> THE COURT: Total offense level 34, criminal history category II.

> DEFENSE COUNSEL: That's with the career offender.

> THE COURT: No, career offender is criminal history category VI.

> DEFENSE COUNSEL: I'm sorry.

> THE COURT: Oh, well, the offense level.

> DEFENSE COUNSEL: Yeah, he moved from a 29 to a 34. So I think it was 97 to 121. So without the career offender enhancement, but with his criminal history without the enhancement, he was looking at basically the ten-year minimum mandatory.

Sentencing Hearing Tr. at 48–49. As a result of these arguments, the Court ultimately varied from the suggested guidelines range of 262–327 months and sentenced Gonzales to 200 months. Sentencing Hearing Tr. at 53; Judgment at 2–3 (Crim. Doc. 126). Accordingly, this ineffective assistance claim would be denied on the merits.

### B.    Denial of Due Process

Gonzales also asserts that his due process rights were violated, contending that the Government "committed prosecutorial misconduct . . . by fabricating evidence against him." <u>See</u> Supporting Memorandum at 10. In the Motion to Dismiss, the Government argues that Gonzales effectively waived this challenge to his sentence pursuant to the sentence-appeal waiver in his Plea Agreement. <u>See</u> Motion to Dismiss at 5. The Court agrees and finds that Gonzales is barred from asserting this claim as he knowingly and voluntarily pled guilty and waived the right to collaterally attack his sentence on this ground.

Sentence-appeal waivers such as that involved here "will be enforced in almost all circumstances." <u>United States v. Garcia</u>, 213 F. App'x 817, 821 (11th Cir. 2007) (citing <u>Bushert</u>, 997 F.2d at 1350). Indeed, a defendant may waive "the right to appeal difficult or debatable legal issues," including blatant error, and not just frivolous claims. <u>United States v. Howle</u>, 166 F.3d 1166, 1169 (11th Cir. 1999). Here, Gonzales knowingly and voluntarily waived the right to collaterally challenge his sentence on any ground except: (1) if his sentence exceeds his applicable guideline range as determined by the Court; (2) if it exceeds the statutory maximum penalty; and (3) if it violates the Eighth Amendment. Plea Tr. at 25–26; Plea Agreement at 10. Gonzales' due process claim does not fall within any of these exceptions, and is therefore barred from being

raised in this proceeding. Howle, 166 F.3d at 1168; See, e.g., United States v. Wilson, 445 F. App'x 203, 204–05, 207–09 (11th Cir. 2011) (per curiam) (enforcing petitioner's sentence-appeal waiver by its terms by dismissing certain collateral challenges that did not fall within the three exceptions to the waiver). Ferrara v. United States, 456 F.3d 278, 291 (1st Cir. 2006) ("But a plea is not rendered infirm merely because [the defendant] discovers long after the plea has been accepted that his calculus misapprehended the quality of the [government's] case." (internal quotations omitted)); Nguyen v. United States, 114 F.3d 699, 105 (8th Cir. 1997) ("Considering all the circumstances, the allegedly withheld exculpatory material 'did not compromise either the truth or the voluntary and knowing nature of the plea.'" (quoting Campbell v. Marshall, 769 F.2d 314, 323–24 (6th Cir. 1985), cert. denied, 475 U.S. 1048 (1986)). Accordingly, Gonzales' collateral claim is due to be denied as having been effectively waived.

## IV.    Certificate of Appealability Pursuant to 28 U.S.C. § 2253 (c)(1)

If Gonzales seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253 (c)(2). To make this substantial showing, Gonzales "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'"

Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.  Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1.    The Government's Motion to Dismiss Petitioner's Pro Se Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 12) is **GRANTED**.

2.    Gonzales' Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) is **DENIED**.

3.    The Clerk shall enter judgment in favor of the Government and against Gonzales, and close the file.

4.      If Gonzales appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** in Jacksonville, Florida, this 11th day of July, 2014.

MARCIA MORALES HOWARD
United States District Judge

i25
Copies to:
Counsel of Record
Petitioner